UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

David J. Dukes,

                Plaintiff,             **MEMORANDUM OPINION
                                                                                   AND ORDER**
vs.                                                    Civil No. 07-2587 ADM/JSM

Specialty Staff, Inc. and
Fabcon Inc.,

                Defendants.

---

Jesse Gant III, Esq., Jesse Gant, III, Attorney at Law, P.A., Blaine, MN, appeared for and on behalf of the Plaintiff David Dukes.

Louise A. Behrendt, Esq. and Michael S. Kreidler, Esq., Stich, Angell, Kreidler & Dodge, P.A., Minneapolis, MN, appeared for and on behalf of the Defendant Specialty Staff, Inc.

Clifford M. Greene, Esq. and Robin M. Wolpert, Esq., Greene Espel, P.L.L.P., Minneapolis, MN, appeared for and on behalf of the Defendant Fabcon, Inc.

---

## I. INTRODUCTION

On August 19, 2008, the undersigned United States District Judge heard oral argument on Defendant Fabcon, Inc.'s ("Fabcon") Motion for Summary Judgment [Docket No. 49] and Defendant Specialty Staff, Inc.'s ("SSI") Motion for Summary Judgment [Docket No. 53]. In his Complaint [Docket No. 1], Plaintiff David Dukes ("Dukes") alleges that Fabcon and SSI's termination of his employment was racially discriminatory, and that SSI retaliated against him by denying him future employment for complaining about the alleged discrimination in violation of 42 U.S.C. § 1981. Because Dukes has failed to establish discriminatory intent by a decision maker at Fabcon and failed to demonstrate that SSI's stated reason for denying Dukes future employment is pretextual, Defendants' Motions are granted.

## II. BACKGROUND[1]

**A.  Dukes' Career with Fabcon**

This case has a complex history, but the basic time line of events is not in dispute. Dukes is an African-American male who worked for SSI, a temporary employment agency, and was assigned to Fabcon. Compl. ¶ 3. Fabcon manufactures precast concrete wall panels for use in construction. Markgraf Aff. [Docket No. 67] ¶ 12. Dukes worked at Fabcon as a laborer from October 30, 2004, until December 31, 2004; his 2004 seasonal layoff is not in dispute. Dukes Dep. (Behrendt Aff. [Docket No. 60] Ex. B) at 14. Upon learning there were openings at Fabcon the following April, Dukes contacted both SSI and Fabcon. Id. at 16. He was hired, and his second tenure at Fabcon began on April 7, 2005. Id. at 18. On May 24, 2005, Dukes' Supervisor Paul Peterson ("Peterson") told him his work was not up to par, and Fabcon was discontinuing his assignment with them. Peterson Aff. [Docket No. 66] ¶ 3. That same day Peterson sent an email to his boss, his fellow supervisors, and SSI stating that, "[Dukes] has not been putting forth as much effort as he did last year and he has alienated him self [sic] with most of the workers to the point of being counterproductive." Id. Ex. A.

**B.  Discrimination at Fabcon**

Dukes claims a number of statements demonstrate the racial animus of Fabcon employees that resulted in his termination. The most serious of these occurred when Dukes overheard a locker room comment made by Mike Kearney ("Kearney") to Peterson. Dukes Dep. (Behrendt Aff. Ex. B) at 64. Why Dukes was present in the locker room, where he agrees he was not

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

supposed to be at the time, is uncertain but while there he overheard Kearney tell Peterson, "as long as I'm a foreman, there would never be a Black man holding a position with this company." Id.  The foundation for this statement is troubling because Dukes' recollection of its timing has been fluid.  In his Complaint, Dukes alleges the statement was made on the day Peterson returned Dukes to SSI for reassignment.  Compl. ¶ 9.  However, in his deposition Dukes testified that Kearney made the statement a week and a half before he was terminated and then contradicted that testimony by later testifying that Kearney made the statement a few days before his termination.  Dukes Dep. (Behrendt Aff. Ex. B) at 170-74.  Adding to the confused timing of this comment is Dukes' affidavit which he submitted after his deposition testimony.  In the affidavit, Dukes states Kearney made the comment two weeks prior to Dukes' dismissal, but the words "two weeks" are crossed out, and the words "two day" [sic] are inserted in their place.  Dukes Aff. [Docket No. 78] Ex. A ¶ 9.  Dukes did not initial or date the change.

Dukes has also submitted an affidavit from Walter Wood, an African-American employee of Fabcon.  Wood Aff. [Docket No. 78].  In his affidavit, Wood states he has heard Kearney make many derogatory comments directed at African-Americans.  Wood Aff. ¶¶ 2, 3.  Wood recalls Kearney stating, "Blacks are on the bottom, then Mexicans, then Whites," "a Black has no place holding a position in this company," and "Blacks don't know how to do nothing but sell drugs and do temp work."  Id.

Finally, Dukes claims Fabcon discriminated against him because it overworked African-Americans.  He testified he argued with the lead man on his stripping crew because, "Caucasian workers [were not] doing as much as the African-Americans were doing."  Dukes Dep. (Behrendt Aff. Ex. B) at 51-52.  In this context, Dukes uses "Caucasian" to refer to foreigners

including "Russian, Chinamen, and the Hispanic." Id. at 52.

**C.     SSI's Involvement**

Dukes applied for work through SSI in the Fall of 2004, and his first position was with Fabcon. Dukes Dep. at 10. After his initial departure from Fabcon, SSI placed him at Zip Sort from February 2005 until he was rehired at Fabcon in mid-April 2005. Croft Aff. [Docket No. 61] Ex. B (payroll records). While he worked at Fabcon, Dukes was paid by check issued by SSI. Dukes Dep. (Behrendt Aff. Ex. B) at 78-79. Dukes testified that he told SSI employees Don, Lee, and Kelly[2] about discrimination at Fabcon in 2004. Id. at 137-38. He told Diaz that Fabcon was overworking African-Americans to make them quit, and told Lee that one of "the Chinese guys" told him that no other African-American had lasted as long at Fabcon as Dukes. Id. at 139-40. In spite of this discrimination, Dukes told Diaz he "didn't mind" the overwork because he was making a lot of money. Id. at 139. Dukes also claims he told Thomas "there was discrimination out there" at Fabcon once or twice in 2004. Id. at 137-38.

Dukes did not formally complain to SSI about racism at Fabcon until two days after his dismissal from Fabcon. Dukes and SSI present two different versions of this meeting. In Dukes' version, he went to SSI's offices to ask for the email from Peterson explaining why he was fired. Id. at 85. Dukes eventually spoke with James Croft ("Croft") the Risk Manager at SSI. Id. Croft informed him that he could not get the email without giving SSI a written request. Id. at 86. According to Dukes, he raised his voice at this point and told Croft his explanation was "hogwash." Id. Dukes then allegedly informed Croft of racism at Fabcon by claiming Fabcon

---

[2] "Don" is likely Don Diaz ("Diaz"); "Lee" is likely Mailee Lee ("Lee"); and "Kelly" is likely SSI Senior Coordinator Kelly Thomas ("Thomas"). SSI Mem. in Supp. of Mot. for Summ. J. [Docket No. 59] at 5.

was "treating African-Americans different than other[s]" and that Fabcon was "discriminating against [him]," though Dukes gave Croft no specifics when Croft asked him to explain his comments. Id. at 143.

Croft's version of events differs from Dukes' in a number of respects. According to Croft, Dukes arrived at SSI to pick up his final check for his work at Fabcon. Croft Aff. ¶ 6. Upon being told his check would not be available until later in the day, Dukes "went into a tirade, accusing [Croft] of lying and claiming the check had already been cut. He demanded the check immediately and began yelling and swearing." Id. During this outburst, Dukes accused Fabcon of racism but refused to provide Croft with any additional information when Croft inquired about specifics. Id. ¶ 7. Croft avers Dukes never asked to see the email from Fabcon. Id. ¶ 8. Croft decided not to place Dukes with other SSI customers because, if Dukes "was unable to control himself at Specialty Staff offices, he would similarly be unable to control himself at the work site of a customer." Id. ¶ 9.

**D.     Complaint with the Minnesota Department of Human Rights**

On July 20, 2005, Dukes filed a complaint with the Minnesota Department of Human Rights (the "MDHR") against Fabcon alleging employment discrimination on the basis of his race under the Minnesota Human Rights Act. Minn. Stat. §§ 363A.01-363A.41. Markgraf Aff. Ex. C. On September 13, 2005, the MDHR found no probable cause to believe Fabcon engaged in an unfair discriminatory practice and dismissed the charge. Id. In its Memorandum of Decision, the MDHR found that the weight of the evidence supported Fabcon's non-discriminatory reason for termination. Id. at ¶ 2. Dukes chose not to appeal the MDHR determination.

Dukes also filed a complaint with the MDHR against SSI on August 19, 2005, alleging that SSI discriminated against him on the basis of race in violation of the Minnesota Human Rights Act. Minn. Stat. §§ 363A.01-363A.41. Behrendt Aff. Ex. I. After conducting an investigation, the MDHR determined there was no probable cause to proceed. Id. The Memorandum of Decision states there was no evidence that SSI "engaged in conduct that would constitute a violation of the Act when it chose not to continue to provide employment opportunities with its clients" to Dukes. Id. at ¶ 2. Dukes did not appeal this determination. On April 26, 2007, Dukes filed this action in the Fourth Judicial District of the Minnesota State Court, and Defendants removed to Federal Court pursuant to 28 U.S.C. § 1441(b). Notice of Removal [Docket No. 1].

### III. DISCUSSION

**A.     Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953,

957 (8th Cir. 1995). "Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." Whitley v. Peer Review Sys., Inc., 221 F.3d 1053, 1055 (8th Cir. 2000) (internal citations omitted).

**B.     Discrimination under 42 U.S.C. § 1981**

42 U.S.C. § 1981(a) provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." A plaintiff may show discrimination under § 1981 through direct or indirect evidence. Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004). If the plaintiff relies on direct evidence, he must show "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated[] the adverse employment action." Id. A plaintiff's discrimination and retaliation claims under § 1981 based on indirect evidence are analyzed with respect to the McDonnell Douglas burden shifting framework.[3] See Clearwater v. I.S.D #166, 231 F.3d 1122, 1124 n.2 (8th Cir. 2001). Under McDonnell Douglas, the Plaintiff first has the burden of establishing a prima facie case. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). For racial discrimination claims, the plaintiff must show that 1) he is a member of a protected class; 2) he is qualified for the position; 3) adverse action was taken against him; and 4) there is some evidence that would

---

[3] The prima facie case that a plaintiff must prove in the first prong of the McDonnell Douglas burden shifting analysis varies slightly between the discrimination and retaliation claims.

7

allow the inference of improper motivation. Landon v. Northwest Airlines, Inc., 72 F.3d 620, 624 (8th Cir. 1995). Next, the defendants may rebut the presumption established by the plaintiff's prima facie case by articulating a legitimate, non-discriminatory reason for the adverse employment action. Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 259 (8th Cir. 1996). Finally, the burden shifts back to the plaintiff to prove that the defendants' legitimate reasons "were not [their] true reasons, but were a pretext for discrimination." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id.

### 1. Dukes' Direct Evidence of Discrimination at Fabcon

Dukes proffers Kearney's statements as direct evidence of discrimination at Fabcon. Kearney is alleged to have stated, "as long as I'm a foreman, there would never be a Black man holding a position with this company," "Blacks are on the bottom, then Mexicans, then Whites," "a Black has no place holding a position in this company," and "Blacks don't know how to do nothing but sell drugs and do temp work." Dukes Dep. (Behrendt Aff. Ex. B) at 64; Wood Aff. ¶¶ 2, 3. Assuming Kearney made these statements, the statements do not establish the fourth element of a prima facie case of improper motivation for Dukes' termination.

Summary judgment will be denied if the plaintiff produces "direct evidence of conduct or statements by persons involved in the decision-making process, which indicate a discriminatory attitude was more likely than not a motivating factor in the employer's decision." Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1045-46 (8th Cir. 2005). Direct evidence does not include "stray remarks in the workplace," "statements by non-decision makers," or "statements

by decision makers unrelated to the decisional process itself." King v. Hardesty, 517 F.3d 1049, 1058 (8th Cir. 2008) (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)).  The statements by Kearney fall squarely into the category of comments by a non-decision maker.  Dukes has presented no evidence that Kearney played any role in the decision to terminate him.  Supervisor Peterson states that he alone was responsible for the decision to fire Dukes, an assertion buttressed by the email to his boss and SSI staff on the date of termination.  Peterson Aff. ¶ 4; Ex. A.  Dukes' attempt to link Kearney to the decision-making process is entirely premised on a chart that merely shows Kearney and Peterson at the same position in the organizational hierarchy at Fabcon.  Organizational Chart [Docket No. 78] Ex. J.  Because Dukes has presented no evidence Kearney played a role in the decision to fire him, there is no direct evidence to support his claim of discrimination at Fabcon.

   **2.** **Indirect Evidence of Discrimination at Fabcon**

  The lack of direct evidence does not end the analysis.  The next step is to determine if indirect evidence supports a discrimination claim under the McDonnell-Douglas burden shifting approach.  For the purposes of this motion, Fabcon concedes that Dukes has made a prima facie case of discrimination.  Fabcon Mem. in Supp. of Summ. J. [Docket No. 64] at 19.  Fabcon asserts the non-discriminatory reasons for Dukes' termination are his inadequate performance and that he had become "counterproductive" because he had "alienated him self [sic] with most of the workers."  Dukes Dep. (Behrendt Aff. Ex. B at 57-58); Peterson Aff. Ex. A.  The burden next shifts to Dukes to demonstrate this articulated reason is pretextual.  Burdine, 450 U.S. at 253.

  Dukes argues the statements by Kearney, the low number of African-American

9

employees at Fabcon, and Dukes being assigned more responsibility and overtime demonstrate pretext on the part of Fabcon. Dukes Dep. (Behrendt Aff. Ex. B) at 53-54; Ex. List of Pl. in Opp'n to Def.'s Mot. for Summ. J. [Docket No. 78] Ex. H, I, and O. None of this evidence is sufficient to demonstrate pretext. As to the comments by Kearney, offensive remarks made by a non-decision maker, without more, do not create a trial worthy issue of pretext. Simmons v. Oce-USA, Inc., 174 F.3d 913, 916 (8th Cir. 1999); Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 779 (8th Cir. 1995) (holding that evidence of age disparaging comments made by non-decision makers does not support a finding of pretext). Dukes' evidence citing low numbers of African-American employees similarly fails. While statistical evidence "may support a finding of pretext, particularly where there are independent, direct grounds for disbelieving the employer's explanation for discharge," there must be additional evidence of pretext and the statistics must be probative of the reason for the termination. Hutson, 63 F.3d at 778 (internal quotations omitted); see also Bogren v. State of Minnesota, 236 F.3d 399, 406 (8th Cir. 2001). Dukes has failed to present additional evidence of pretext or demonstrate beyond mere assertions the probative value of the statistics. Finally, Dukes' increased responsibility and overtime are not evidence of pretext and contradict his argument. Upon his re-employment with Fabcon, Dukes was given more responsibility in his new position on the stripping crew. One new qualification that was not required in his former position was "good people and leadership skills." Ex. List of Pl. in Opp'n to Def.'s Mot. for Summ. J. Ex. I. This new requirement of his increased responsibility actually *supports* Fabcon's professed reason for termination and does not give rise to an inference of pretext. The reasons given for his termination were that he was not working as hard as the prior year and had alienated himself from the other workers. The

evidence presented demonstrates that Dukes' strong work during his first tenure at Fabcon likely led to his new position, but it was also the inability to satisfy the extra requirements of the new position that led to his termination.

Because Dukes has failed to present direct evidence of discrimination, or evidence that Fabcon's professed reason for termination was pretext, he cannot survive Fabcon's Motion for Summary Judgment.

### 3. Evidence of Discrimination at SSI

Dukes presents two theories of discrimination against SSI. The first is based on discrimination in contracting under 42 U.S.C. § 1981 that mirrors his claim against Fabcon. This theory fails for the reasons delineated above in the discussion of the claim against Fabcon; namely that he can show no evidence of direct evidence of discrimination nor that Fabcon's professed reason for termination was pretextual. The second theory is a retaliation claim under 42 U.S.C. § 1981. The second theory also fails as a matter of law.

For retaliation claims, the Plaintiff must show that 1) he engaged in statutorily protected activity; 2) he suffered an adverse employment action; and 3) a causal connection existed between the adverse employment action and the protected activity. Barge, 87 F.3d at 259; Wiehoff v. GTE Directories Corp., 61 F.3d 588, 598 (8th Cir. 1995). Next, the defendants may rebut the presumption established by the plaintiff's prima facie case by articulating a legitimate, non-discriminatory reason for the adverse employment action. Barge, 87 F.3d at 259. Finally, the burden shifts back to the plaintiff to prove that the defendants' legitimate reasons "were not [their] true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated

against the plaintiff remains at all times with the plaintiff." Id.

Although Dukes may not have established a prima facie case of discrimination, the Court will assume *arguendo* that he has made a prima facie showing. Adelman-Reyes v. St. Xavier Univ., 500 F.3d 662, 665 (7th Cir. 2007) (noting that courts "may skip the analysis of a plaintiff's prima facie case and proceed directly to the evaluation of pretext"). SSI has presented the affidavit of Risk Manager Jim Croft who stated that while at the SSI offices, Dukes "went into a tirade" including yelling and using offensive language. Croft Aff. ¶ 6. Croft states that because of this behavior, he decided that Dukes should not be placed with future customers since "he would similarly be unable to control himself at the work site of a customer." Id. ¶ 9. Dukes does not dispute that SSI has asserted a legitimate, non-discriminatory reason. Therefore, the Court proceeds to analyze pretext.

"[The pretext] inquiry is limited to whether the employer gave an honest explanation of its behavior, not whether its action was wise, fair or correct." McKay v. U.S. Dep't of Transp., 340 F.3d 695, 700 (8th Cir. 2003) (quotation omitted). There are at least two ways a plaintiff can establish a question of fact regarding pretext. Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1120 (8th Cir. 2006). First, a plaintiff can indirectly show pretext with evidence that the employer's explanation is "'unworthy of credence' because it has 'no basis in fact.'" Id. (quoting Burdine, 450 U.S. at 256, and Smith v. Allen Health Sys., Inc., 302 F.3d 827, 834 (8th Cir. 2002)). Second, a plaintiff can directly show pretext "'by persuading the court that a [prohibited] reason more likely motivated the employer.'" Id. (insertion in original) (quoting Burdine, 450 U.S. at 256).

The only evidence Dukes has submitted to support this pretext claim is his April 10, 2008, Affidavit. Dukes Aff. Ex. A. Dukes claims he became "upset but was not disrespectful" at his meeting with Croft and argues that Diaz's agreement to drive him to Fabcon to pick up his final check would not have occurred if Dukes had been yelling and cursing. Id. ¶ 11. Dukes contends this evidence creates a fact question making the issue inappropriate for summary judgment.

Prior to filing this affidavit, however, Dukes testified that while talking to Croft the discussion "kind of got heated." Dukes Dep. (Behrendt Aff. Ex. B) at 92. He admitted that he was upset and, "raise[d] his voice," getting "a little loud." Id. He also admitted he got angry and when that happens, "[his] voice kind of raises." Id. at 144. In Herring v. Canada Life Assurance. Co., the Eighth Circuit explained, "a party cannot create a 'sham' issue of fact in an effort to defeat summary judgment by filing an affidavit directly contradicting prior deposition testimony." 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1365-66 (8th Cir. 1983)). While there is a limited exception if a subsequent affidavit "explain[s] certain aspects of the deposition testimony or where the prior testimony reflects confusion on the part of the witness," this exception does not apply here. Herring, 207 F.3d at 1030-31. Dukes' affidavit does not explain any aspects of his deposition testimony, it merely contradicts his earlier statements. Therefore, when the affidavit is considered with what is undisputed in the record, Dukes has not presented any evidence of pretext. Because Dukes has failed to present evidence of pretext, he cannot survive SSI's Motion for Summary Judgment.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motions for Summary Judgment [Docket Nos. 49 & 53] are **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  September 8, 2008.